IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| | : | |
| OLUYINKA RIVADENEIRA, et al. | : | |
| v. | : | Civil Action No. DKC 26-139 |
| SHERIFF MAXWELL UY, in his individual and official capacity as Sheriff of Montgomery County, Maryland, et al. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this constitutional tort case are a motion to dismiss or, in the alternative, for summary judgment filed by Defendants Deputy Hakim Bayyan, Deputy Lenworth Black, and Sheriff Maxwell Uy (collectively, "Sheriff Defendants"), (ECF No. 10), a motion to dismiss filed by Defendants 18630 Laytonsville, LLC and Behrouz Rahmi (collectively, "Landlord Defendants"), (ECF No. 21), a motion for leave to file non-PDF exhibits filed by the Sheriff Defendants, (ECF No. 14), and a motion for extension of time to file a response filed by Plaintiffs Oluyinka Rivadeneira, Jose Rivadeneira, and Woodfield Business Center and Venues, Inc., d/b/a Synergy Business Center, (ECF No. 24). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the Sheriff Defendants' motion to dismiss or, in the alternative, for

summary judgment will be granted in part and denied in part, the Landlord Defendants' motion to dismiss will be granted in part and denied in part, the Sheriff Defendants' motion to file non-PDF exhibits will be denied without prejudice, and Plaintiffs' motion for extension of time will be granted.

## I. Background[1]

This case stems from an aborted eviction of a business owned by the Plaintiffs from a property owned by a subset of the Defendants. Individual Plaintiffs Oluyinka Rivadeneira ("Ms. Rivadeneira") and Jose Rivadeneira ("Mr. Rivadeneira") operated the corporate Plaintiff Woodfield Business Center and Venues, Inc., d/b/a Synergy Business Center ("Woodfield") (collectively, "Plaintiffs"). (ECF No. 2-1 ¶¶ 5, 6, 15). In May 2022, on behalf of Woodfield, Ms. Rivadeneira entered into a commercial lease agreement ("Lease Agreement") with Defendant 18630 Laytonsville, LLC ("18630 Laytonsville") for approximately 5,200 square feet of office and warehouse space in Gaithersburg, Maryland. (*Id.* ¶¶ 27-28). The initial term of the Lease Agreement was from May 1, 2022, through April 30, 2025, with a rent of $6,000 per month. (*Id.* ¶¶ 29-30). Plaintiffs also paid a security deposit of $12,000. (*Id.* ¶ 31). The Lease Agreement was "facilitated and managed by"

[1] Unless otherwise noted, all facts are taken from the amended complaint and construed in the light most favorable to Plaintiffs.

Defendant Peter Drury ("Mr. Drury") and his company, The Drury Companies, Inc. (*Id.* ¶ 32). As the property manager, Mr. Drury "had the right to enter the premises at reasonable hours to inspect the property, provided such entry did not unreasonably interfere with Plaintiffs' business operations." (*Id.* ¶ 33). The Lease Agreement also contained a covenant of quiet enjoyment. (*Id.* ¶ 34). In the leased property, Plaintiffs operated the business center "as a professional business services facility, providing office space, meeting rooms, warehousing, and related services to small businesses, entrepreneurs, and professionals in the Gaithersburg area." (*Id.* ¶ 36).

In 2023, a landlord-tenant action was filed in the District Court of Maryland for Montgomery County after "a dispute arose between Plaintiffs and Defendants regarding rent payments."[2] (*Id.* ¶ 39). The court "issued a judgment in favor of Defendants and a warrant of restitution for possession of the premises" on or about July 6, 2023.[3] (*Id.* ¶ 40). Plaintiffs subsequently satisfied all

[2] Plaintiffs are frequently unclear throughout the amended complaint about which Defendants, and which Plaintiffs, took specific actions. Plaintiffs state that a rental payment dispute arose with "Defendants," but does not specify which of the seven Defendants were involved.

[3] Plaintiffs state that the warrant of restitution "had an expiration date clearly stated on its face, as required by Maryland law." (ECF No. 2-1 ¶ 41). Plaintiffs did not attach the warrant of restitution to the amended complaint. The Sheriff Defendants attached the warrant of restitution, (ECF No. 13), to their motion

payment obligations related to the case, but Defendants did not notify the Montgomery County Sheriff's Office that Plaintiffs had paid their obligation. (*Id.* ¶¶ 42-44). On November 3, 2023, Defendants Deputy Lenworth Black ("Deputy Black") and Deputy Hakim Bayyan ("Deputy Bayyan") arrived at the property in Gaithersburg, accompanied by a commercial eviction crew and Defendants Mr. Drury and John Doe. (*Id.* ¶¶ 58, 59). This was 120 days after the warrant's issuance, (*id.* ¶ 60), and the individual Plaintiffs were not at the property, (*id.* ¶ 65). Deputy Black, holding the warrant of restitution, and Deputy Bayyan determined that the property was unoccupied and allowed the eviction crew to enter and begin removing Plaintiffs' property. (*Id.* ¶¶ 62, 66). Plaintiffs were alerted to the eviction underway by their video security system. (*Id.* ¶ 67). Ms. Rivadeneira used the security system's intercom feature to tell those inside "that the eviction was illegal, that all monies had been paid, and that they must cease immediately and

---

to dismiss or, in the alternative, for summary judgment. Because this document is integral to several of Plaintiffs' claims, the court can consider it on a motion to dismiss. *Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023). The warrant of restitution does not include an expiration *date* as contemplated by Plaintiffs. It does, however, include the date it was issued (July 6, 2023) and a statement saying that the sheriff is "directed to deliver possession of the premises to the . . . landlord or their agent or attorney and[] . . . to remove from the premises, by force if necessary, all property of the [tenants] and any other occupant(s) within 60 days of the date of this order." (ECF No. 13, at 1).

leave the premises." (*Id.* ¶ 69). Plaintiffs immediately called Deputy Black on his cell phone and informed him that they had satisfied all payment obligations and that the warrant of restitution "had expired more than sixty days after its July 6, 2023 issuance." (*Id.* ¶¶ 70–71). Deputy Black checked with Mr. Drury, who confirmed that Plaintiffs had paid all obligations. (*Id.* ¶¶ 72, 73). Deputies Black and Bayyan "directed that the ongoing removal of additional property be halted, but ordered that property already removed from Plaintiffs' business suite be left in the common area hallway rather than returned to its proper location" inside Plaintiffs' leased suite. (*Id.* ¶¶ 74, 75). Plaintiffs' property was damaged in the process, and they allege that the removal "rendered the premises unusable for business operations." (*Id.* ¶¶ 77, 79).

Plaintiffs had other trouble with Mr. Drury throughout their tenancy aside from his participation in the attempted eviction. Plaintiffs allege "[b]eginning in 2023 and continuing through 2024, Defendant Drury engaged in a pattern of conduct designed to interfere with Plaintiffs' business operations, harass Plaintiffs, and drive them from the premises." (*Id.* ¶ 45). In support, Plaintiffs cite two occasions. First, on or about November 1, 2023, Mr. Drury contacted Ms. Rivadeneira to say that the building owner wanted to install a sprinkler system, and an installation

person needed to do a walkthrough of the property. (*Id.* ¶¶ 46-47). Mr. Drury apparently did the walkthrough with Defendant John Doe, who was also present at the attempted eviction days later. (*Id.* ¶ 80). Plaintiffs believe that "the walkthrough had been a reconnaissance mission to survey the premises and identify valuable property for theft during the planned illegal eviction." (*Id.* ¶ 81). Plaintiffs do not appear to allege that anything was actually stolen during the attempted eviction; rather, they allege that Mr. Drury "gave specific instructions to John Doe and the eviction crew regarding which items to remove and which items to leave behind to potentially claim after the illegal eviction." (*Id.* ¶ 82). Second, Mr. Drury interrupted a "closed-door business meeting" with a potential tenant at the property on March 25, 2024. (*Id.* ¶¶ 50-51). Mr. Drury "made verbal threats to Plaintiff Oluyinka Rivadeneira, stating that she would be evicted and demanding that all future business agreements be cancelled." (*Id.* ¶ 52). The potential tenant then declined to do business with Woodfield; due to word spreading about the interaction, "at least four other Gaithersburg-area businesses decided not to pursue leasing agreements" with Woodfield. (*Id.* ¶¶ 54, 56).

Finally, Plaintiffs state "[o]n or about May 22, 2024-more than six months after the illegal eviction-Defendants Drury, [Behrouz] Rahmi, and/or [18630 Laytonsville] filed or caused to be

filed criminal charges against Plaintiffs for malicious destruction of property."[4] (*Id.* ¶ 96). Plaintiffs allege that these allegations were false and filed in order to "retaliat[e] against Plaintiffs for challenging the illegal eviction and seeking to vindicate their rights." (*Id.* ¶ 97). The charges against Plaintiffs "were dismissed via nolle prosequi" on or about June 28, 2024. (*Id.* ¶ 101).

Plaintiffs filed an action in the Circuit Court for Montgomery County on October 31, 2025. (ECF No. 1 ¶ 1). The amended complaint (ECF No. 2-1) brings fifteen counts: 42 U.S.C. § 1983 claims for violating the Fourth Amendment (Count I) and Fourteenth Amendment (Count II) against Deputies Black and Bayyan, violation of Article 26 (Count III) and Article 24 (Count IV) of the Maryland Declaration of Rights against the Sheriff Defendants, violation of 42 U.S.C. § 1981 against Mr. Drury and the Landlord Defendants (Count V), malicious prosecution against Mr. Drury and the Landlord Defendants (Count VI), "abuse of process" against Mr. Drury and the Landlord Defendants (Count VII),[5] intentional interference with business relations and prospective economic advantage against Mr.

[4] Defendant Rahmi is identified as the "owner or principal" of 18630 Laytonsville. (ECF No. 2-1 ¶ 22).

[5] The amended complaint contains two counts designated Count VIII and no count designated Count VII. The court assumes this is in error and will refer to the abuse of process count as Count VII.

Drury and the Landlord Defendants (Count VIII), breach of contract – covenant of quiet enjoyment against the Landlord Defendants (Count IX), trespass against Mr. Drury and the Landlord Defendants (Count X), conversion against all Defendants (Count XI), intentional infliction of emotional distress against Mr. Drury and the Landlord Defendants (Count XII), negligence against the Sheriff Defendants (Count XIII), gross negligence against the Sheriff Defendants (Count XIV), and civil conspiracy under Maryland law against all Defendants (Count XV).

The Sheriff Defendants removed the case to this court on January 14, 2026. (ECF No. 1). Mr. Drury filed an answer on February 5, 2026. (ECF No. 9). The Sheriff Defendants filed a motion to dismiss or, in the alternative, for summary judgment on February 13, 2026, (ECF No. 10), followed by a motion for leave to file non-PDF exhibits on February 24, 2026, (ECF No. 14). Plaintiffs filed an opposition to the motion to dismiss on February 28, 2026, (ECF No. 17), but did not oppose the motion for leave to file the exhibits. The Sheriff Defendants filed a reply in support of their motion to dismiss on March 11, 2026. (ECF No. 19). The Landlord Defendants filed a motion to dismiss on April 2, 2026. (ECF No. 21). On April 24, 2026, Plaintiffs filed a motion for extension of time to file a response to the motion to dismiss, (ECF No. 24), as well as the opposition to the motion to dismiss,

(ECF No. 25). The Landlord Defendants filed a reply on May 7, 2026. (ECF No. 26).

**II. Sheriff Defendants' Motion**

The Sheriff Defendants move to dismiss or, in the alternative, for summary judgment. (ECF No. 10). When a party moves to dismiss or, in the alternative, for summary judgment, it invokes the court's discretion under Fed.R.Civ.P. 12(d). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. 12-cv-2319-ELH, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller's Federal Practice & Procedure § 1366 (3d ed. 2004, 2012 Supp.)).

> The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on

> notice that conversion under Rule 12(d) may occur. *See Moret v. Harvey*, 381 F.Supp.2d 458, 464 (D.Md. 2005).

*Jackson v. Sagal*, 370 F.Supp.3d 592, 598 (D.Md. 2019). For the party opposing conversion to summary judgment to raise adequately that it has not had a sufficient opportunity for discovery, "the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the 'specified reasons' why 'it cannot present facts essential to justify its opposition.'" *Id.* (quoting Fed.R.Civ.P. 56(d)).

As noted above, the Sheriff Defendants styled their motion as one to dismiss or for summary judgment, thus the notice requirement has been satisfied. Plaintiffs oppose the conversion to summary judgment in their opposition, (ECF No. 17-1, at 3), and include a declaration from Ms. Rivadeneira identifying specific information they hope to receive through discovery that would allow them to "fairly oppose Defendants' attempt to obtain summary judgment," (*id.* at 25). Plaintiffs include information such as "Sheriff's Office procedures for scheduling and verifying warrants of restitution, including any tracking of the warrant's express 60-day directive" and "[c]ommunications between Sheriff's Office personnel and the landlord/agent concerning payment status, satisfaction, and whether the eviction should proceed." (*Id.*). These materials bear directly on the unresolved issues in the case.

Because of the outstanding factual issues and the clear request for discovery, the court will limit the Sheriff Defendants' motion to a motion to dismiss.

**III. Standard of Review**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)). A complaint must only satisfy Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct

alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299–300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). The court may consider documents attached to the complaint on a motion to dismiss, as well as documents integral to the complaint that are attached to the motion to dismiss if there is no dispute about their authenticity. *Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023).

## IV. Analysis

Between the two motions, the Sheriff Defendants and Landlord Defendants have moved to dismiss all fifteen counts in the amended complaint. Some threshold issues have been raised or are apparent from the amended complaint.

### A. Woodfield as a Plaintiff

Defendants raise a threshold issue of the appropriate Plaintiffs.[6] They argue that Woodfield lacked the power to

---

[6] Defendants characterize this argument as "standing" related. Plaintiffs are correct that the capacity of a party is different from standing. *See In re Total Auto Fin. LLC*, --- F.4th ---, 2026 WL 2251900 (4th Cir. Aug. 5, 2026) (discussing "the claim-ownership principle" and when shareholders may, and may not, bring an claim that belongs to the corporation). Whether the individual Plaintiffs may bring certain of the claims asserted in the amended

initiate this lawsuit at the time of filing because the company's charter had been forfeited. (ECF Nos. 10, at 10-11; 21, at 4-5). In support, both groups of Defendants point to the Maryland State Department of Assessments and Taxation ("SDAT") website, which shows that Woodfield's charter was forfeited on October 1, 2025, just a month before Plaintiffs filed their complaint.[7] Plaintiffs do not dispute that the corporation's charter was forfeited but argue that the corporation's status at the time of the filing is irrelevant, as the issue was "cured" when the business was revived on March 29, 2026. Alternatively, Plaintiffs seek leave to amend. (ECF No. 25, at 5).

Defendants have the correct interpretation of the law. According to Fed.R.Civ.P. 17(b)(2), a corporation's "[c]apacity to sue or be sued is determined . . . by the law under which it was

complaint has not been raised by Defendants. Because Plaintiffs will be allowed to amend to assert claims on behalf of the corporation again, consideration of "claim ownership" can be deferred for now.

[7] "[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (citing *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2015)). Courts in this district have previously taken judicial notice of information available on Maryland's SDAT website, as they are publicly available records. *See, e.g.*, *Auto USA, Inc. v. DHL Express (USA), Inc.*, No. 16-cv-3580-ELH, 2017 WL 839525, at *4 (D.Md. Mar. 3, 2017) (taking judicial notice "of the fact that SDAT forfeited [the plaintiff]'s corporate charter . . . many months before the suit was filed here").

organized." Plaintiffs do not deny that Woodfield is a Maryland company that was not in good standing at the time the amended complaint was filed. (ECF No. 25, at 5). Under Maryland law, a corporation cannot "validate a lawsuit that it initiated when its charter was forfeited – and therefore, it legally did not exist – by reviving its charter." *Tri-Cnty. Unlimited, Inc. v. Kids First Swim Sch. Inc.*, 191 Md.App. 613, 621 (2010); *see also Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 163 (2004) ("[G]enerally any suit filed on behalf of [the corporation] while its charter was forfeit, was a nullity as a matter of Maryland law."). Woodfield will be dismissed as a Plaintiff. Plaintiffs will be granted leave to amend to reinstitute appropriate claims of Woodfield.

**B. Motion for Leave to File Video Exhibits**

On February 24, 2026, the Sheriff Defendants filed a motion for leave to file non-PDF exhibits. (ECF No. 14). The motion seeks to file two videos. (*Id.* at 1). No opposition was filed. Because the videos are not being filed to contradict Plaintiffs' essential allegations, the motion will be denied and the videos will not be considered on the motion to dismiss.

While district courts are permitted to consider documents attached to a motion to dismiss under certain circumstances, the Fourth Circuit has articulated slightly different considerations for video recordings such as these. "[A] district court can

consider a video submitted at the motion to dismiss stage when (1) the video is 'integral' to the complaint and its authenticity is not challenged, but (2) only to the extent that the video 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' the plaintiff's allegations, rendering the plaintiff's allegations implausible." *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679-80 (4th Cir. 2024) (quoting *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024)).

The videos that the Sheriff Defendants seek to file are the body-worn camera footage of the eviction from Deputies Black and Bayyan. (ECF Nos. 10, at 5; 14). Defendants do not contend that the videos show information that "blatantly contradicts" Plaintiffs' allegations; rather, the videos appear to support Plaintiffs' essential facts about the eviction's beginning and ending. Because the videos are not submitted to contradict the amended complaint, the submission of the video exhibits is premature. The court will deny the motion for leave to file the non-PDF exhibits without prejudice to renewal at the appropriate time. *See Dillard v. Am. Ass'n of State Highway & Transp. Offs.*, No. 24-cv-1154-TJS, 2025 WL 1029552, at *2 (D.Md. Apr. 7, 2025) (denying the plaintiff's motion for leave to file physical exhibit without prejudice to renewal, because the plaintiff did not need to substantiate the claims in his complaint at the pleading stage);

*Jones v. Balt. Police Dep't*, No. 24-cv-652-BAH, 2025 WL 896385, at *6 (D.Md. Mar. 24, 2025) ("Because the physical exhibits do not appear to directly contravene the complaint, they are of little import to the Court's analysis, which focuses on the sufficiency of the allegations in the complaint.").

**C. Motion for Extension of Time to File Reply**

On April 24, 2026, Plaintiffs filed a motion for leave to file their opposition to the Landlord Defendants' motion to dismiss out of time, (ECF No. 24), after the court pointed out in a paperless order the day before that the opposition had not been received, (ECF No. 23). Defendants[8] did not consent to the motion; Defendants apparently noted to Plaintiffs, however, that they did not intend to file an opposition to the request. (ECF No. 24, at 2). No opposition was filed.

Another court in this district previously described the liberal standard for motions for extension of time:

> A motion for extension of time should be liberally granted at the court's discretion, where the motion is timely filed and good cause exists. Fed.R.Civ.P. 6(b)(1). [. . .] Where a motion is not timely filed, a movant must demonstrate the existence of both good cause for granting the extension and excusable neglect regarding the motion's untimely filing. Fed.R.Civ.P. 6(b)(2); *see Chamblee v. Old Dominion Sec. Co., LLC*, No. 3:13cv820, 2014 WL 1415095[] (E.D.Va. Apr. 10, 2014). A

[8] Plaintiffs, again, do not specify if "Defendants" refers to only the Landlord Defendants, or all Defendants.

> court should consider four factors when determining whether excusable neglect exists: (1) the danger of prejudice to the adverse party; (2) the length of the delay; (3) whether the delay was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Ins. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395[] (1993). Even where a motion for extension is not timely filed, courts often liberally grant such requests under their own discretion. See *Tindall*[ *v. First Solar*], 892 F.3d [1043,] 1048[ (9th Cir. 2018)]; *see also* Fed.R.Civ.P. 15(a)(2) ("[A] court should freely give leave when justice so requires.").

*Louise Trauma Ctr., LLC v. U.S. Citizenship & Immigr. Servs.*, No. 23-cv-2846-RDB, 2024 WL 3555043, at *3 (D.Md. July 26, 2024), *rev'd on other grounds*, 147 F.4th 495 (4th Cir. 2025). The motion for extension of time was not timely filed; it was filed the day after the court requested an update from Plaintiffs about whether they planned to file an opposition after the due date came and went. Defendants did not oppose the motion, however, and Plaintiffs acted promptly to file the motion alongside the opposition to the motion to dismiss the day after the court's paperless order. The court will grant the motion for extension of time and consider Plaintiffs' opposition.

**D. Sheriff Defendants' Motion to Dismiss**

**1. Capacity of Sheriff Defendants**

The amended complaint is internally inconsistent in describing the capacity of Defendants Deputy Black and Deputy

Bayyan. In the caption of the amended complaint, both are listed with "individually" next to their names. (ECF No. 2-1, at 1). In the body of the amended complaint, however, Plaintiffs state that they are suing both Deputy Black and Deputy Bayyan in their "official and individual capacities." (*Id*. ¶¶ 25, 26).

An "official" capacity claim is another way of pleading a claim against the governmental entity for which a person is an agent. This is to be contrasted with an allegation that an individual was acting under color of law in an individual capacity claim.

The court will assume that Plaintiffs are suing Deputies Black and Bayyan in both their individual and official capacities, and the clerk will be directed to amend the case caption accordingly.[9] The claims under § 1983, however, cannot proceed against them in their "official" capacities. The Sheriff Defendants contend that the § 1983 Fourth Amendment claims against Deputies Black and Bayyan should be dismissed because they were acting in their official capacities. (ECF No. 10-1, at 10-11). Under Maryland law, the Sheriff Defendants qualify as state officials. *Paulone v. City of Frederick*, 787 F.Supp.2d 360, 375 (D.Md. 2011)

[9] Plaintiffs are consistent in stating that Sheriff Maxwell Uy is sued in both his individual capacity and official capacity as Sheriff of Montgomery County, Maryland. (ECF No. 2-1, at 1; *id.* ¶ 24).

(collecting cases). The Supreme Court of the United States has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the § 1983 claims against Deputies Black and Bayyan in their official capacities will be dismissed.

This distinction, however, is only material for the federal claims. In Maryland, "the particular official/individual capacity dichotomy that is part of § 1983 law does not apply to state constitutional violations." *Ritchie v. Donnelly*, 324 Md. 344, 373 (1991). Instead, any state constitutional violation claims are brought against the Sheriff Defendants in their individual capacities only. *Graham v. Maryland*, 738 F.Supp.3d 644, 657 (D.Md. 2024).

**2. Counts I and II: 42 U.S.C. § 1983**

The Sheriff Defendants move to dismiss the two claims against Deputies Black and Bayyan brought under § 1983: one under the Fourth Amendment (Count I) and one under the Fourteenth Amendment (Count II). Both claims rest on the officers' actions during the attempted eviction, with nearly identical language. (*Compare* ECF No. 2-1 ¶ 108*, with id*. ¶ 116). Plaintiffs contend that they suffered a Fourteenth Amendment violation when Deputies Black and Bayyan "deprived Plaintiffs of their property interests by

executing an expired warrant and forcibly evicting them from the premises without due process of law." (*Id.* ¶ 116). But "[d]ressing a Fourth Amendment claim up in due process language does not transform it into a Fourteenth Amendment claim." *Smith v. Travelpiece*, 31 F.4th 878, 885 (4th Cir. 2022) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 366–67 (2017); *United States v. Colkley*, 899 F.2d 297, 302 (4th Cir. 1990)). The two claims rest on the same activity, and the claim is more accurately pleaded under the Fourth Amendment. *See Lehan v. Wilson*, No. 21-cv-0362-BAH, 2025 WL 1261168, at *6 n.5 (D.Md. Apr. 30, 2025) (citing *Travelpiece*, 31 F.4th at 884-85) (considering a claim under the Fourth and Fourteenth Amendments for an unlawful seizure "as a claim implicating the Fourth Amendment alone"). The § 1983 claim under the Fourteenth Amendment (Count II) will be dismissed.

To prevail on a § 1983 claim, "a plaintiff must show that (1) the defendant deprived her of a right secured by the Constitution or the laws of the United States and (2) [the] deprivation was achieved by the defendants acting under color of state law." *Dent v. Montgomery Cnty. Police Dep't*, 745 F.Supp.2d 648, 656 (D.Md. 2010) (citing *Paul v. Davis*, 424 U.S. 693, 696–97 (1976)). Defendants do not dispute that they were acting under color of state law; indeed, they were state officials acting pursuant to a warrant at the time of the events at issue. The Sheriff Defendants

move to dismiss on the ground that Deputies Black and Bayyan did not deprive Plaintiffs of their Fourth Amendment rights. (ECF No. 10-1, at 12).

Plaintiffs allege deprivation in the form of an unreasonable seizure. (ECF No. 2-1 ¶ 109). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Supreme Court has previously held that police participation in an eviction can implicate the Fourth Amendment. *See Soldal v. Cook County*, 506 U.S. 56, 61, 69 (1992). In *Soldal*, a landlord asked sheriff deputies to help him remove the plaintiffs' mobile home from his property. *Id.* at 58. The sheriff deputies and landlord knew they did not have a lawful eviction order but, nevertheless, removed the plaintiffs' mobile home from the landlord's property. *Id.* at 59. The plaintiffs brought a claim under § 1983 alleging the eviction violated their Fourth Amendment rights. *Id.* In finding that the plaintiffs' eviction was a seizure, the Supreme Court explained that a seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Id.* at 61 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113

(1984)). The eviction in *Soldal* took place without a valid warrant or lawful eviction order, but the Court stopped short of finding a Fourth Amendment violation and remanded the issue of whether the seizure was reasonable. *Id.* at 61–62, 72.

Indeed, even where law enforcement reasonably relied on a facially valid warrant that was later found invalid, the Supreme Court has held that law enforcement's actions passed constitutional muster. *See United States v. Leon*, 468 U.S. 897, 922 (1984). In some circumstances, however, a warrant "may be so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id*. at 923 (citing *Massachusetts v. Sheppard*, 468 U.S. 981, 988–91 (1984)).

Although the landlord obtained a warrant of restitution in this case, Plaintiffs have plausibly alleged that the warrant was expired – and therefore facially deficient - at the time it was executed. The District Court of Maryland for Montgomery County issued the warrant of restitution on July 6, 2023. (ECF No. 13, at 1). The warrant's instructions to the executing officers read, in pertinent part:

> [Y]ou are directed to deliver possession of the premises to the plaintiff/landlord or their agent or attorney and, unless local law requires otherwise, to remove from the premises, by force if necessary, all property of the defendant(s)/tenant(s) and any other

> occupant(s) within 60 days of the date of this order.

*Id.*

The Sheriff Defendants contend the warrant was not expired because the 60-day period referred to the need for the landlord to call and schedule the eviction, not the Sheriff Defendants' need to execute the warrant. (ECF No. 10-1, at 13). In support of this claim, the Sheriff Defendants cite Md. Code Ann., Real Prop. § 8-401(f)(iii) and *Westminster Mgmt., LLC v. Smith*, 486 Md. 616 (2024). (*Id.* at 13–14). In *Westminster Mgmt.*, the court noted, "[t]he landlord has 60 days from the date of judgment to request the warrant, and 60 days from the date the warrant is issued to act on it, or the judgment of possession is stricken." *Westminster Mgmt.*, 486 Md. at 629 n.7 (citing Md. Code Ann., Real Prop. § 8-401(f)(ii)–(iii)). The language in *Westminster Mgmt.* largely mirrors the statute, which provides, in pertinent part:

> If the landlord orders a warrant of restitution but takes no action on the warrant within 60 days from the later of the date the court issues the order for the warrant or the date as otherwise extended by the court:
> 1. The warrant of restitution shall expire and the judgment for possession shall be stricken[.]

Md. Code Ann., Real Prop. § 8-401(f)(iii).

Section 8-401(f) and *Westminster Mgmt.* specify consequences for when a landlord fails to act on a warrant of restitution within 60 days. But the face of the warrant contains instructions for

its execution by law enforcement, which is not contemplated in either of those authorities. The warrant directed officers to conduct the eviction within 60 days of its issuance in July 2023, but Deputies Black and Bayyan did not execute it until November 3, 2023. (ECF No. 2-1 ¶ 58). Thus, Plaintiffs have plausibly alleged that the warrant was expired when Deputies Black and Bayyan executed it.

Although the text of the Fourth Amendment does not require a warrant to have an expiration date to be valid, the Fourth Circuit has held that execution of a warrant outside of its judicially authorized period can violate the Fourth Amendment. *See Yanez-Marquez v. Lynch*, 789 F.3d 434, 468 (4th Cir. 2015) (holding nighttime execution of a daytime warrant violated petitioner's Fourth Amendment rights). Thus, on a motion to dismiss, with questions of fact viewed in the light most favorable to Plaintiffs, they have sufficiently pleaded a plausible Fourth Amendment violation.

The claim, however, will only move forward against Deputies Black and Bayyan in their *individual* capacities. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Personal-capacity suits[] . . . seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, '[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough

to show that the official, acting under color of state law, caused the deprivation of a federal right.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985))).

### 3. Counts III and IV: Maryland Declaration of Rights

Plaintiffs bring two claims under the Maryland Declaration of Rights, the state law analogues of their federal constitutional claims. Count III is brought under Article 26, which protects the right to be free from unreasonable searches and seizures and is read "*in pari materia* with the Fourth Amendment." *Dent*, 745 F.Supp.2d at 661 (quoting *Richardson v. McGriff*, 361 Md. 437, 452–53 (2000)). "As such, the disposition of Plaintiff[s'] § 1983 claim under the Fourth Amendment 'dictates the same result on [their] Article 26 claim.'" *Id*. (quoting *Mazuz v. Maryland*, 442 F.3d 217, 231 (4th Cir. 2006)). The motion to dismiss Count III against Deputies Black and Bayyan is denied.

Unlike their § 1983 claim, Plaintiffs also bring the Article 26 count against Sheriff Uy. Plaintiffs seek to hold Sheriff Uy liable through either *respondeat superior* or supervisory liability theories.[10] (ECF No. 2-1 ¶ 159). The Sheriff Defendants move to

[10] In the language of their amended complaint, Plaintiffs seem to be seeking to hold the county or the state accountable for the actions of the officers. (*See* ECF No. 2-1 ¶¶ 159 ("Maryland courts have recognized that constitutional violations can be based on patterns or practices similar to *Monell* claims under federal law."), 161 ("The State of Maryland is appropriately held answerable for the acts of its sheriff deputies because it can

dismiss only on the grounds that the warrant of restitution was valid. (ECF No. 10-1, at 14). As described above, Plaintiffs have plausibly alleged that the warrant was expired when Deputies Black and Bayyan executed it. The motion to dismiss Count III will be denied as against Sheriff Uy as well.

Count IV is brought under Article 24 of the Maryland Declaration of Rights. Article 24 is read *in pari materia* with the Fourteenth Amendment. *Samuels v. Tschechtelin*, 135 Md.App. 483, 523 (2000) ("[Maryland] courts have long equated the Due Process Clause and Article 24."). As with Plaintiffs' Fourteenth Amendment claim, the crux of their constitutional argument is about the seizure of their property and is more properly pleaded under Article 26. *See Randall v. Peaco*, 175 Md.App. 320, 330 (2007) (applying the same Fourth Amendment jurisprudence to a claim brought under both Article 24 and Article 26); *Mendoza v. Anne Arundel County*, No. 23-cv-01383-JRR, 2024 WL 1243839, at *7-8 (D.Md. Mar. 22, 2024). Count IV will be dismissed against the Sheriff Defendants.

---

avoid such misconduct through adequate training and supervision and can prevent repetition by disciplining negligent employees.")). Plaintiffs brought this case against Sheriff Uy rather than the county or the state. Defendants did not move to dismiss on this basis.

**4. Counts XIII and XIV: Negligence and Gross Negligence**

The Sheriff Defendants are immune from negligence claims under the Maryland Tort Claims Act ("MTCA"). The MTCA "grants immunity to State personnel from liability 'for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence.'" *Francis v. Maryland*, No. 21-cv-1365-ELH, 2023 WL 2456553, at *23 (D.Md. Mar. 10, 2023) (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (West)). Count XIII, a negligence claim, will be dismissed against the Sheriff Defendants. Because the MTCA expressly excludes immunity from gross negligence, the court will consider if Plaintiffs have sufficiently pleaded gross negligence under Count XIV to survive a motion to dismiss.

Plaintiffs have sufficiently alleged gross negligence by Deputies Black and Bayyan.

> Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another," *Cooper v. Rodriguez*, 443 Md. 680, [708] (2015) (citation omitted)— "something *more* than simple negligence, and likely more akin to reckless conduct," *Barbre*[ *v. Pope*, 402 Md. 157, 187 (2007)] (quoting *Taylor v. Harford Cty. Dep't of Soc. Servs.*, 384 Md. 213, [229] (2004)). A government official commits gross negligence "only when he or she inflicts injury intentionally or is so utterly indifferent to the rights of others that he or she acts as if such rights did not

> exist." *Cooper*, [443 Md. at 708] (brackets and citation omitted).

*Nero v. Mosby*, 890 F.3d 106, 127-28 (4th Cir. 2018). The warrant of restitution stated on its face that law enforcement must deliver the property to the landlord within 60 days of the date of the warrant. The eviction did not occur until approximately 120 days after the warrant of restitution was signed. With all facts construed in favor of Plaintiffs, the court cannot say as a matter of law that this was not gross negligence.

The opposite is true, however, for Sheriff Uy. In support of their gross negligence claim, Plaintiffs only say "Defendant Sheriff Uy's failure to implement basic verification procedures, tracking of expiration dates, and immediate cease-and-restore protocols, in the face of obvious risks of unlawful evictions, likewise constituted gross negligence in supervision and policy." (ECF No. 2-1 ¶ 251). This is too conclusory and vague to support the high bar for gross negligence. The gross negligence claim against Sheriff Uy will be dismissed.

**E. Landlord Defendants' Motion to Dismiss**

**1. Count V: 42 U.S.C. § 1981**

Plaintiffs' Count V is a claim for a violation of 42 U.S.C. § 1981 against Defendants Drury, Rahmi, and 18630 Laytonsville, which the latter two have moved to dismiss. (ECF No. 21, at 5-6). Section 1981 "guarantees, among other things, '[a]ll persons

. . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 330 (2020) (alteration in original). In order to prevail under § 1981, Plaintiffs "must initially plead and ultimately prove that, but for race, [they] would not have suffered the loss of a legally protected right." *Id*. at 341.

The Landlord Defendants argue that the § 1981 claim should be dismissed because the corporate Plaintiff, Woodfield, was the only Plaintiff who was a party to the contract and was defunct at the time of filing. (ECF No. 21, at 5-6). This may be true, but the claim has a more fundamental problem: Plaintiffs have not plausibly alleged a claim under § 1981.[11] Far from plausibly alleging that their race was a but-for cause of their alleged deprivation, Plaintiffs provide no facts in support of such a claim. Plaintiffs only state "[u]pon information and belief, no non-Black tenants managed or supervised by Drury were subjected to comparable treatment or interference with their contractual or business rights." (ECF No. 2-1 ¶ 194e). Pleading solely "upon information and belief" is insufficient. *Kashdan v. George Mason Univ.*, 70

[11] While the Landlord Defendants did not raise this argument, district courts may *sua sponte* dismiss inadequate claims under Rule 12(b)(6) if Plaintiffs are given notice and an opportunity to amend their complaint. *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290-91 (4th Cir. 2021).

F.4th 694, 702 (4th Cir. 2023) (affirming dismissal of a claim where the plaintiff's allegations were "far too speculative," and the complaint was "devoid of facts supporting the allegations that were pleaded upon information and belief"). Plaintiffs plead no additional facts about the actions of either Defendant Rahmi or 18630 Laytonsville, instead seeking to hold them accountable for Mr. Drury's actions "under the doctrine of respondeat superior and agency principles." (ECF No. 2-1 ¶ 196). But those assertions are too vague to state a claim against Mr. Drury or the Landlord Defendants. The Fourth Circuit has found such conclusory assertions insufficient to state a § 1981 claim:

> Without factual detail, we are unable to infer that [the defendant] intended to interfere with a contractual interest of [the plaintiff] on the basis of race. Instead, we are left with just the sort of "labels, conclusions, recitations of a claim['s] elements and naked assertions devoid of further factual enhancement," *ACA Fin. Guar. Corp.*[ *v. City of Buena Vista*], 917 F.3d [206,] 211[ (4th Cir. 2019)], that the Supreme Court (and our Court) have held will not suffice to meet the Rule 8 standard, *Iqbal*, 556 U.S. at 678[]; *see also Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 394 (4th Cir. 2021) (affirming dismissal of a § 1981 complaint because it alleged only facts supporting "that [the plaintiff] was treated differently, not that she was treated differently because of her race").

*Nadendla v. WakeMed*, 24 F.4th 299, 306 (4th Cir. 2022) (final alteration in original). Plaintiffs' § 1981 claim will be

dismissed against the Landlord Defendants, but Plaintiffs will be given an opportunity to amend to provide more factual information.

**a. Impact on Defendant Drury**

The court may *sua sponte* dismiss meritless claims against nonmoving parties where the plaintiffs have had an opportunity to argue the legal sufficiency of their claims. *See J & J Sports Prods., Inc. v. MayrealII, LLC*, 849 F.Supp.2d 586, 592 (D.Md. 2012) (granting a motion to dismiss as to all defendants because the claims against the nonmoving defendant were "indistinguishable" from those against the moving defendant, and because the "plaintiff [had] a full opportunity to brief the sufficiency of the allegations and, as a matter of law, they [were] equally deficient as to [the nonmoving defendant]" (collecting cases)).

While Mr. Drury answered the complaint, (ECF No. 9), and has not moved to dismiss, the § 1981 claim against him is equally deficient. As described above, Plaintiffs try to hold all Landlord Defendants and Mr. Drury accountable based on a single "upon information and belief" assertion. Plaintiffs argued the legal sufficiency of their claims in their opposition to the Landlord Defendants' motion to dismiss. (ECF No. 25, at 7-8). Accordingly, Count V will be dismissed against Defendant Drury as well, with Plaintiffs given leave to amend to provide additional facts in support of their claim.

**2. Mr. Drury as Agent of Landlord Defendants**

Much of the Landlord Defendants' motion to dismiss rests on the premise that Mr. Drury was not their agent, and therefore they cannot be held liable for any of his actions. (ECF No. 21, at 6-10, 11–12, 14-16). The Landlord Defendants argue that Mr. Drury was an independent contractor, and they should be protected from liability. (*Id*. at 9).

Landlord Defendants' heavy reliance on the term "independent contractor" is misplaced. The actual test for agency under Maryland law does not include such a distinction:

> An agency relationship "is a legal concept which depends upon the existence of required factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Restatement (Second) of Agency § 1, cmt. (1958); *see Insurance Company of North America v. Miller*, 362 Md. 361, 373[] (2001); *Green v. H & R Block, Inc.*, 355 Md. 488, 503[] (1999). Although such a relationship is not necessarily contractual in nature, it is always consensual. *Insurance Co. Of N. Amer.*, 362 Md. at 373[], citing *Lohmuller Bldg. Co. v. Gamble*, 160 Md. 534, 539[] (1931). The ultimate question is one of intent, of both the principal and the agent. *Id*.; *Howard Cleaners v. Perman*, 227 Md. 291, 295[] (1961). We have recognized three factors as having particular relevance to the

> determination of an agency relationship. These factors are:
> (1) The agent's power to alter the legal relations of the principal;
> (2) The agent's duty to act primarily for the benefit of the principal; and
> (3) The principal's right to control the agent.
> *Green*, 355 Md. at 503[], citing *United Capitol Ins. v. Kapiloff*, 155 F.3d 488, 498 (4th Cir. 1998); *Proctor v. Holden*, 75 Md.App. 1, 20[], *cert. denied sub nom*., 313 Md. 506, [](1988); *Schear v[.] Motel Management Corp.*, 61 Md.App. 670, 687[] (1985) (stating the factors derive from sections 12–14 of the Restatement); Restatement (Second) of Agency §§ 12–14 (1958). The three factors are evaluated within the totality of the circumstances. *Green*, 355 Md. at 506[]. The presence of all three factors is not required for a finding of an agency relationship. *Id*.

*Beyond Sys., Inc. v. Realtime Gaming Holding Co.,* 388 Md. 1, 26-27 (2005).

Plaintiffs have sufficiently alleged that Mr. Drury was an agent of the Landlord Defendants. The facts available on the motion to dismiss have plausibly alleged that Mr. Drury had "the power to alter the legal relations of" the Landlord Defendants. In the Lease Agreement that the Landlord Defendants attached to their motion to dismiss, Mr. Drury signed on behalf of the "Landlord," (ECF No. 21-1, at 6),[12] elsewhere identified as Mr. Rahmi, (*id*. at 5). The rental payment provision states that

[12] The Lease Agreement is integral to and relied on in the amended complaint and the parties do not dispute its authenticity.

payment should be made to Mr. Drury's company, not directly to either of the Landlord Defendants. (*Id*. at 1). Plaintiffs have also alleged facts showing that Mr. Drury had "the duty to act primarily for the benefit of" the Landlord Defendants. In the amended complaint, all the interaction that Plaintiffs had with the Landlord Defendants was through Mr. Drury, who was carrying out the request to put in a sprinkler system, present at the eviction, and aware that Plaintiffs had paid off the amount in the warrant of restitution that 18630 Laytonsville had secured. For purposes of the motion to dismiss, Plaintiffs have sufficiently alleged that Mr. Drury was an agent of the Landlord Defendants such that they can be liable for his actions.[13]

**3. Count VI: Malicious Prosecution**

The Landlord Defendants next move to dismiss Plaintiffs' malicious prosecution claim. Under Maryland law, "[t]he elements of malicious prosecution are '(1) the defendant instituted a criminal proceeding against the plaintiff; (2) the criminal proceeding was resolved in the plaintiff's favor; (3) the defendant

[13] This conclusion also has an important impact on the claims against Mr. Drury. Because nearly all the claims against the Landlord Defendants are solely supported by facts about Mr. Drury, the claims against them are "indistinguishable" such that it is appropriate to dismiss any claims against Mr. Drury that are found to be insufficient against the Landlord Defendants. *See J & J Sports Prods., Inc. v. MayrealII, LLC*, 849 F.Supp.2d 586, 592 (D.Md. 2012).

did not have probable cause to institute the proceeding; and (4) the defendant acted with malice or a primary purpose other than bringing the plaintiff to justice.'" *Garcia v. Montgomery County*, 145 F.Supp.3d 492, 523 (D.Md. 2015) (quoting *Okwa v. Harper*, 360 Md. 161, 183 (2000)).

Plaintiffs have not pleaded facts sufficient to meet elements three and four of the test. The few paragraphs about this count are both vague and conclusory. Plaintiffs allege that the Landlord Defendants "filed or caused to be filed criminal charges against Plaintiffs for malicious destruction of property," but these charges were "based on false allegations and were filed for the improper purpose of retaliating against Plaintiffs." (ECF No. 2-1 ¶¶ 96-97). This is far too conclusory to raise the plausible inference that there was no probable cause to institute the proceeding, or that the Defendants acted with malice or another improper purpose. The court cannot grasp at straws to fill in the factual gaps. The malicious prosecution claim will be dismissed against the Landlord Defendants and Mr. Drury, as the claim is equally deficient as to his involvement.

**4. Count VII: Abuse of Process**

Plaintiffs bring an abuse of process claim against the Landlord Defendants for both the attempted prosecution and the attempted eviction. (*Id.* ¶ 204).

> To state a cause of action for abuse of process (*i.e.*, a legal proceeding or action), a party must allege facts sufficient to satisfy three elements: “first, that the defendant wilfully used process,” such as a subpoena or a protective order, “after it has issued in a manner not contemplated by law; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant’s perverted use of process.” *One Thousand Fleet*[ *Ltd. P’ship v. Guerriero*], 346 Md. [29,] 38[ (1997)] (citations omitted).

*Charles v. Charles*, 265 Md.App. 631, 649, *cert. denied sub nom.*, *Charles v. Summerfield*, 492 Md. 439 (2025). “A cause of action for civil abuse of process in Maryland requires that the plaintiff establish that an arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process.” *One Thousand Fleet*, 346 Md. at 45 (citing *Bartlett v. Christhilf*, 69 Md. 219, 231 (1888)).

Plaintiffs have sufficiently pleaded an abuse of process claim related to the attempted eviction. Plaintiffs allege that the Landlord Defendants, through their agent Mr. Drury, pursued an eviction based on an expired warrant of restitution when they knew that Plaintiffs had cured the debt owed in the warrant. This is an instance of “process regularly issued but then abused in the manner of its execution.” *Herring v. Citizens Bank & Tr. Co.*, 21 Md.App. 517, 530 (1974). The Landlord Defendants’ only argument to dismiss the claim is that they cannot be held liable for the actions of Mr. Drury. (ECF No. 21, at 7-10). This argument is

unavailing; as described above, Plaintiffs have sufficiently pleaded that Mr. Drury was the agent of the Landlord Defendants.

The abuse of process claim related to the criminal charges is not adequately pleaded. The "mere issuance of process itself . . . is not actionable, even if it is done with ulterior motive or bad intention." *Lilly v. Balt. Police Dep't*, 694 F.Supp.3d 569, 593 (D. Md. 2023) (quoting *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md.App. 504, 530 (2004)). Moreover, Plaintiffs do not allege how, if at all, the criminal charges resulted in an arrest of the person (as opposed to a summons) or the seizure of property. The motion to dismiss Count VII will be denied as to the attempted eviction but granted as to the criminal charges.

**5. Count VIII: Intentional Interference with Business Relations and Prospective Economic Advantage**

Count VIII is a claim for intentional interference with business relations and prospective economic advantage. Under Maryland law, to succeed on a claim of tortious interference, the following elements must be shown: "(1) intentional and wil[l]ful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 652 (1994) (quoting *Willner*

*v. Silverman*, 109 Md. 341, 355 (1909)). "[T]he two general types of tort actions for interference with business relationships are inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F.Supp.2d 837, 851 (D.Md. 2005) (alteration in original) (quoting *Nat. Design, Inc. v. Rouse Co.*, 302 Md. 47, 69 (1984)).

For liability to attach, the interference must be "wrongful or unlawful." *Travelers Indem. Co. v. Merling*, 326 Md. 329, 343 (1992) (collecting cases). The Supreme Court of Maryland "has explained that '. . . an act of tortious interference with economic relations is characterized by the defendant's specific purpose to interfere, and . . . acts which incidentally affect another's business relationship are not a sufficient basis for the tort.'" *Hebbeler v. First Mariner Bank*, No. 17-cv-3641-ELH, 2020 WL 1033586, at *18 (D.Md. Mar. 2, 2020) (quoting *Alexander & Alexander Inc.*, 336 Md. at 656).

Defendants first argue that Woodfield is the only Plaintiff with standing to bring this claim. (ECF No. 21, at 10).[14] As a general rule, "a shareholder or member of a corporation or LLC may

---

[14] Once again, "claim ownership" is not the same as Article III standing. *See supra* note 6.

not recover for tortious interference of the business or contract of the corporation or LLC." *Baron Fin. Corp. v. Natanzon*, 471 F.Supp.2d 535, 540 (D.Md. 2006) (citing, inter alia, *First Com. Bank, N.A. v. Walker*, 333 Ark. 100, 109 (1998)). But this is not as sweeping a rule as it seems. Plaintiffs are bringing a claim of tortious interference with "business relations and prospective economic advantage," but do not identify any particular contracts. (ECF No. 2-1 ¶ 209). If Plaintiffs have pleaded that the Landlord Defendants sought to interfere with their individual prospective business relations, their claim can move forward:

> Simply put, [the individual plaintiff] does <u>not</u> allege that the [defendants] intended to harm [the company plaintiff], that they acted improperly to do so, and that [the individual plaintiff], as the owner of [the company plaintiff], was harmed economically as a result. The claim has a slight but important difference. [The individual plaintiff] alleges that the [defendants] intended to harm *him* and acted improperly to do so. Therefore, [the individual plaintiff may] bring this claim.

*Press v. United States*, No. 17-cv-1667-JKB, 2018 WL 2237492, at *8 (D.Md. May 16, 2018).

Plaintiffs have sufficiently alleged a claim of intentional interference with business relations against the Landlord Defendants. First, Plaintiffs identify the intentional and willful acts of the Landlord Defendants as the attempted eviction, Mr. Drury interrupting a business meeting in March 2024, comments

from Mr. Drury, and the filing of criminal charges against Plaintiffs. (ECF No. 2-1 ¶ 211). They have sufficiently alleged that these actions were "calculated to cause damage to [Plaintiffs] in their lawful business:" during a client meeting, Mr. Drury allegedly "made verbal threats to Plaintiff Oluyinka Rivadeneira, stating that she would be evicted and demanding that all future business agreements be cancelled." (*Id.* ¶ 52). At this stage, they have sufficiently alleged the third element, that these actions were "done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant." Mr. Drury was present at the eviction and did not tell the Deputies that Plaintiffs had paid the money due on the warrant of restitution, rendering it void and removing any right he had to interfere with their property. Finally, Plaintiffs have alleged damages resulting from the Landlord Defendants' actions, including the loss of their business relationship with Keith Tate. (*Id.* ¶ 214). The motion to dismiss Count VIII will be denied.

**6. Count IX: Breach of Contract**

Plaintiffs bring a breach of contract claim against the Landlord Defendants, specifically asserting that they breached the covenant of quiet enjoyment. (*Id.* ¶¶ 216-21). Plaintiffs point specifically to paragraph 17 of the Lease Agreement, which promised the tenant "exclusive, quiet, peaceable and undisturbed and

uninterrupted possession of the Leased Premises during the term of this Lease." (*Id*. ¶ 218). "Under Maryland law, a claim for breach of contract must 'allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by the defendant.'" *Titan Custom Cabinets, Inc. v. Truist Bank*, 505 F.Supp.3d 558, 567 (D.Md. 2020) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480 (1977)).

The individual Plaintiffs' claim fails at the threshold. Plaintiffs allege that "[t]he Commercial Lease Agreement executed on May 1, 2022, constituted a valid and enforceable contract between Plaintiff Oluyinka Rivadeneira and Defendant 18630 Laytonsville, LLC." (ECF No. 2-1 ¶¶ 217). The Lease Agreement itself, however, is between 18630 Laytonsville and Woodfield. (ECF No. 21-1, at 1). While Plaintiff Ms. Rivadeneira signed the contract, she signed "[w]ith authority to bind [Woodfield]," not in her individual capacity, (*id*. at 6):

> While these allegations create a plausible claim for relief with respect to [the corporate plaintiff], they do not provide any basis for a breach of contract claim by [the individual plaintiff] individually. "The basic Maryland rule is that privity of contract is a prerequisite for recovery on that contract." *Safer v. Perper*, 569 F.2d 87, 94 (D.C.Cir. 1977). [The individual plaintiff] was simply not a party to the contract which was allegedly breached, and

> therefore, fails to allege breach of contract in this case.

*Titan Custom Cabinets*, 505 F.Supp.3d at 567. Plaintiffs did not provide any basis for the court to find that they were third-party beneficiaries to the contract or otherwise should be able to enforce its provisions. On this record, Count IX will be dismissed, albeit without prejudice as it might be reasserted by Woodfield.

**7. Count X: Trespass**

Plaintiffs bring a trespass claim against the Landlord Defendants based on two events: Mr. Drury's interruption of a business meeting at the property on March 25, 2024, (ECF No. 2-1 ¶ 224), and the attempted eviction on November 3, 2023, (*id.* ¶ 226).

"In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant[s'] physical act or force against that property; (3) which was executed without [Plaintiffs'] consent." *Graham*, 738 F.Supp.3d at 649 (alterations in original) (quoting *Royal Inv. Grp., LLC v. Wang*, 183 Md.App. 406, 445 (2008)). The Landlord Defendants argue that the Lease Agreement allowed them to enter the premises, "just not at an unreasonable hour and not to substantially interfere in business operations," thus the entrance could not have been without

Plaintiffs' consent. (ECF No. 21, at 14 (citing ECF No. 21-1 ¶ 12)). The Landlord Defendants also argue that the individual Plaintiffs did not have a possessory interest in the premises and cannot bring a claim for trespass. (*Id.*)

The Landlord Defendants are correct that the individual Plaintiffs did not have a possessory interest in the commercial property. The Lease Agreement was between 18630 Laytonsville and Woodfield. (ECF No. 21-1, at 1). As such, Mr. and Ms. Rivadeneira "had no personal possessory interest in the office" and cannot succeed on a trespass claim. *Callender v. Callender*, No. 17-cv-3249-TDC, 2020 WL 1083162, at *7 (D.Md. Mar. 6, 2020) (finding no possessory interest in the property for a business owner when the business was the party to the lease). The trespass claim will be dismissed against the Landlord Defendants and Mr. Drury but may be reasserted in an amended complaint by Woodfield.

**8. Count XII: Intentional Infliction of Emotional Distress**

The Landlord Defendants move to dismiss the claim for intentional infliction of emotional distress ("IIED") only on the grounds that Mr. Drury was not their agent. While that argument is unavailing, Plaintiffs simply have not plausibly alleged such a claim, and it will be dismissed regardless.

To bring an IIED claim under Maryland law, Plaintiffs must prove "(1) intentional or reckless conduct (2) that is extreme or

outrageous (3) and caused (4) the plaintiff's severe emotional distress." *Nicholson v. Balt. Police Dep't*, No. 20-cv-3146-DKC, 2023 WL 4549741, at *10 (D.Md. July 14, 2023) (citing *Caldor, Inc. v. Bowden*, 330 Md. 632, 641-42 (1993)). There is a high bar; "[l]iability accrues only 'for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" *McPherson v. Balt. Police Dep't*, 494 F.Supp.3d 269, 286 (D.Md. 2020) (quoting *Ky. Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992)).

Plaintiffs' facts supporting the IIED claim are a mix of conclusory allegations and facts insufficient to state a claim. While the events related to their tenancy were no doubt distressing to the Rivadeneiras, they have not alleged severe emotional distress:

> Even if this Court were to find that Defendants' alleged actions meet the standard for extreme and outrageous conduct, the claim would still fail because the allegations do not support the fourth element of severe emotional distress. A plaintiff must show "a *severely* disabling emotional response to the defendant's conduct." *Harris*[ *v. Jones*], [281 Md. 560, 570 (1977)]. Emotional distress must be "so severe that no reasonable [person] could be expected to endure it." *Id*.[ at 571] (quoting Restatement (Second) of Torts § 46 cmt. j). To meet this requirement, a plaintiff must "state with reasonable certainty the nature, intensity or duration of the alleged emotional injury." *Manikhi*[ *v.*

> *Mass Transit Admin.*], [360 Md. 333, 370 (2000)].

*Adams v. Cameron*, No. 20-cv-3739-TDC, 2021 WL 5280978, at *9 (D.Md. Nov. 12, 2021) (third alteration in original). Plaintiffs state they experienced "severe emotional distress, including anxiety, humiliation, fear and anguish. Plaintiffs' emotional distress was severe and has resulted in ongoing psychological harm." (ECF No. 2-1 ¶¶ 239–40). "This general description is insufficient." *Adams*, 2021 WL 5280978, at *9; *see also Manikhi*, 360 Md. at 368-69 (collecting cases showing the high bar for finding severe emotional distress to sustain an IIED claim in Maryland). The IIED claim will be dismissed against the Landlord Defendants and Mr. Drury.

**F. All Moving Defendants**

Two claims are brought against all Defendants: conversion (Count XI) and civil conspiracy (Count XV). Both the Sheriff Defendants and the Landlord Defendants moved to dismiss each count.

**1. Count XI: Conversion**

Both the Landlord Defendants and the Sheriff Defendants move to dismiss the conversion claim brought against them, asserting that a temporary interference is not sufficient to give rise to such a claim. (ECF Nos. 10-1, at 14–16; 21, at 15).

The tort of conversion is "any distinct act of ownership or dominion exerted by one person over the personal property of

another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560 (1999) (quoting *Interstate Ins. Co. v. Logan*, 205 Md. 583, 588–89 (1954)) (citing *Merchs.' Nat'l Bank v. Williams*, 110 Md. 334 (1909)). Plaintiffs must allege a serious interference with their rights to possess the property. "[F]actors to weigh in determining a serious interference include: (1) the nature and length of Defendant's control; (2) Defendant's intent to displace Plaintiff's control; (3) Defendant's good faith; (4) the nature and length of Plaintiff's right of control; (5) harm to the property; and (6) Plaintiff's inconvenience and expense." *Equity Prime Mortg., LLC v. 1st Fin., Inc.,* No. 17-cv-3754-ADC, 2021 WL 3930707, at *10 (D.Md. Sep. 2, 2021) (citing *Diamond v. T. Rowe Price Assocs., Inc.*, 852 F.Supp. 372, 411 (D.Md. 1994)).

Plaintiffs have sufficiently stated a claim of conversion against the Sheriff Defendants. The Sheriff Defendants carried out the warrant, despite the long-overdue deadline, and exercised dominion over Plaintiffs "substantial personal property" located at the space leased to Plaintiffs' business. (ECF No. 2-1 ¶ 230). While the interference with Plaintiffs' possessory interest was temporary, Plaintiffs allege that much of their property "was damaged during the removal process and while left in the hallway, including broken furniture, damaged equipment, and disorganized

files and business records." (*Id.* ¶ 77). On these facts, Plaintiffs have sufficiently alleged a conversion claim against the Sheriff Defendants.

Plaintiffs have also sufficiently stated a claim of conversion against the Landlord Defendants. The Landlord Defendants, through their agent Mr. Drury, proceeded with the attempted eviction on November 3, 2023, despite the knowledge that Plaintiffs had cured by paying the outstanding debt due on the warrant of restitution. The Landlord Defendants, through their agent Mr. Drury, exercised dominion over Plaintiffs "substantial personal property" located at the space leased to Plaintiffs' business. (ECF No. 2-1 ¶ 230). Again, while the interference with Plaintiffs' possessory interest was temporary, Plaintiffs allege that much of their property "was damaged during the removal process and while left in the hallway, including broken furniture, damaged equipment, and disorganized files and business records." (*Id.* ¶ 77). On these facts, Plaintiffs have sufficiently alleged a conversion claim against the Landlord Defendants.

**2. Count XV: Civil Conspiracy**

"In Maryland, a claim for civil conspiracy requires proof of the following elements: 1) a confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or

tortious means to accomplish an act not in itself illegal; and 3) actual legal damage resulting to the plaintiff." *Lilly*, 694 F.Supp.3d at 592 (citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007)). The Sheriff Defendants move to dismiss the civil conspiracy count, asserting that Plaintiffs have not alleged that they formed an agreement or understanding with each other or any other Defendants. (ECF No. 10-1, at 18–20). The Landlord Defendants move to dismiss on the basis that Mr. Drury was not their agent. (ECF No. 21, at 16–17).

Even in their amended complaint, Plaintiffs fail to allege that the Sheriff Defendants were part of an agreement or understanding related to Plaintiffs. They allege "[w]hile the Sheriff Defendants may not have been original conspirators with knowledge of the fraudulent walkthrough or theft planning, they joined or ratified the conspiracy through their deliberate conduct in executing a facially expired warrant and, critically, through their failure to properly remedy the unlawful eviction once its illegality was confirmed." (ECF No. 2-1 ¶ 263). But "[i]ndependent acts of two wrongdoers do not make a conspiracy." *Lilly*, 694 F.Supp.3d at 592 (alteration in original) (quoting *Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C.*, 639 F.2d 1073, 1076 (4th Cir. 1981)). Plaintiffs provide only conclusory assertions that any of the Sheriff Defendants had any kind of

agreement or understanding with the other Defendants. Plaintiffs "fail to state when the alleged conspiracy was formed, and also to present any facts tending to show that such agreement was, in fact, reached." *Id.* The civil conspiracy claim in Count XV will be dismissed as against the Sheriff Defendants.

Plaintiffs have, however, successfully pleaded a conspiracy claim against Landlord Defendants. Plaintiffs allege that Mr. Drury and Defendant John Doe walked through the commercial space just a few days before the attempted eviction, where they were both present. (ECF No. 2-1 ¶¶ 260, 261). None of the Landlord Defendants notified the Montgomery County Sheriff's Office that Plaintiffs had paid off the debt that gave rise to the warrant of restitution and instead worked toward evicting Plaintiffs. (*Id.* ¶ 270). Landlord Defendants only move to dismiss on the grounds that Mr. Drury was not their agent. (ECF No. 21, at 16-17). As the court described above, that argument is unavailing. On these facts, Plaintiffs have sufficiently alleged a conspiracy, and the Landlord Defendants' motion to dismiss Count XV will be denied.

## V. Conclusion

For the foregoing reasons, the Sheriff Defendants' motion to dismiss will be granted in part and denied in part, the Landlord Defendants' motion to dismiss will be granted in part and denied in part, the Sheriff Defendants' motion to file non-PDF exhibits

will be denied without prejudice, and Plaintiffs' motion for extension of time will be granted. If, as contemplated, Plaintiffs elect to amend, they should take care to identify and specify with precision the Plaintiff or Plaintiffs on whose behalf each claim is asserted, as well as against which Defendant or Defendants each claim is asserted, along with sufficient factual detail validly to state a claim. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge